Hardy Carvell BIVENS, Movant,

v.

STATE of Missouri, Respondent.

No. 44525.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 29, 1982.

Motion for Rehearing and/or Transfer
Denied Sept. 17, 1982.

Application to Transfer Denied
Oct. 18, 1982.

Appleton, Newman & Kretmar, Susan F. Appleton, Robert O. Appleton, Jr., Gerald Kretmar, Clayton, for movant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for respondent.

REINHARD, Presiding Judge.

Movant appeals from the denial, after an evidentiary hearing, his Rule 27.26 motion. We affirm.

On April 28, 1980, the day of trial, movant entered a plea of guilty to capital murder, a violation of § 565.001 RSMo. 1978, and assault in the first degree, a violation of § 565.050 RSMo. 1978 and subsequently was sentenced to life imprisonment without probation or parole for fifty years for the capital murder charge and ten years on the assault charge which was to run concurrent to the murder sentence.

Movant filed his 27.26 motion which was amended after the appointment of counsel.

An evidentiary hearing was held on the motion, after which the court filed extensive findings of fact and conclusions of law and found that movant had not been denied effective assistance of counsel, nor was his plea of guilty involuntary. Therefore, the court denied his motion.

Based on our review of the record, the trial court's findings and conclusions are not clearly erroneous. *Conway v. State,* 630 S.W.2d 87, 89 (Mo.App.1981). Although an extended opinion would have no precedential value, we believe that certain pertinent quotations from the plea of guilty proceedings, evidentiary hearing and other comments are in order.

During the guilty plea proceedings, the assistant prosecuting attorney stated:

Judge, what I expect the State would prove in this case is that on the evening of February 5, 1979, the defendant called his girlfriend, Janice Thompson, around 9:00 and wanted to know what she was doing and she indicates she was going up to the Schnucks Store. She left to go out to the Schnucks Store out by the Halls Ferry Circle with her step-sister, Susie Hawkins, and upon leaving the Schnucks Store, the defendant here, Hardy Carvell Bivens and Michael White picked both Janice Thompson and Susan Hawkins up. Susan Hawkins is the dead girl in this case. They were going to drive them home. They drove past Janice Thompson's house. They changed seats in the car and Hardy Bivens then was on the passenger side.

Janice Thompson would say that after having some words with Hardy Bivens he took a pistol and shot Susan Hawkins in the face and then shot her in the face, they're both told to get down on the back seat of the car and then they were driven to a vacant building down at 23rd and Cass, taken into that building, told to sit on the floor and while sitting on the floor the defendant then shot Susan Hawkins three more times in the head and he then shot Janice Thompson. Janice Thompson played like she was dead. The defendant left the building, reloaded the gun, came

back in and Janice Thompson jumped out a second story window and escaped and told the police and she was taken to the hospital. The defendant then was later picked up. He was interviewed by Detective Sergeant Riley of Homicide. He asked to talk to a priest, a Reverend Burgoon. After talking to Reverend Burgoon for some time he said he would give a statement to the police. The priest sat in on the statement and it was tape-recorded and in that tape-recorded statement the defendant pretty much described how they had picked the girls up and how he had shot both of them and how he had killed Susan Hawkins and he indicated that he shot Janice Thompson because he was jealous and he also indicated that he shot the step-sister, Susan Hawkins, because she had been there at the time that he shot Janice Thompson.

That's basically what the State's evidence would show. It would show that Susan Hawkins was shot seven times in the head and Janice Thompson, the assault victim, was shot once in the face and once in the shoulder.

In response to the court's questioning, movant admitted what had been recited by the state was substantially true. The state indicated that in addition to other evidence, it would have the testimony of the assault victim and the confession of movant as evidence.

During the plea proceedings, movant was represented by a retained, experienced defense counsel. The record establishes that movant pleaded guilty as a result of a plea bargain with the state wherein the state recommended a life sentence without parole for fifty years. At the 27.26 proceeding, movant's attorney testified that "the cause for the agreement was the lack of defense and the quality of the State's case." He said:

I wanted that kid to plead, and the reason I wanted him to plead is because I thought if he went to trial that he would get the death penalty.

For his sole point on appeal, movant states that the guilty plea transcript and evidence at the evidentiary hearing "established that [he] was given erroneous information by Judge Randall and counsel concerning the sentence which he would be given, thereby causing his guilty plea to have been involuntarily and unintelligently made." He seizes upon the following statement by Judge Randall:

Now do you understand that the range of punishment in capital murder *under other circumstances* is either life imprisonment with a requirement that you cannot be paroled for fifty years or death. (emphasis added).

We think it clear the "other circumstances" refer to the defendant standing trial. We have reviewed the transcripts of the plea of guilty and the 27.26 proceedings and determine that movant fully understood he was to be sentenced to life imprisonment without probation or parole for fifty years if he pleaded guilty.

Defense counsel testified at the 27.26 proceeding that before movant entered his plea of guilty he advised his client he was unsure precisely how many years movant would have to serve of that sentence. Movant and his mother though, testified counsel advised him he would definitely serve fewer than fifty years. The trial judge found movant's and his mother's testimony "unbelievable." He is the arbiter of credibility and we are bound by his determination in that regard. *Houston v. State*, 623 S.W.2d 565, 567 (Mo.App.1981).

The statute under which movant was sentenced, § 565.008 RSMo. 1978 became effective May 26, 1977. Counsel was unsure how the statute would be interpreted in the future and had an obligation to so advise movant, an obligation lawyers must frequently perform for their clients. Without the power of prognostication, counsel's statements to movant can only be classified as speculation, a fact which movant understood them to be. Neither counsel nor anyone else can foresee the sentence movant will actually serve.

Based upon our review of the record, we think it clear that movant was not denied

effective assistance of counsel nor was his plea of guilty involuntary.

Affirmed.

SNYDER and CRIST, JJ., concur.